

FILED

DM

12/14/2023

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

BECKY LOUISE SUTTON

No. 22 CR 234

Judge Mary M. Rowland

### PLEA AGREEMENT

1. This Plea Agreement between the Acting United States Attorney for the Northern District of Illinois, MORRIS PASQUAL, and defendant BECKY LOUISE SUTTON, and her attorney, GAL PISSETZKY, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

### Charges in This Case

2. The indictment in this case charges defendant with wire fraud, in violation of Title 18, United States Code, Section 1343 (Counts 1-3); and embezzlement from a bankruptcy estate, in violation of Title 18, United States Code, Section 153 (Counts 4-6).

3. Defendant has read the charges against her contained in the indictment, and those charges have been fully explained to her by her attorney.

4. Defendant fully understands the nature and elements of the crimes with which she has been charged.

## Charge to Which Defendant Is Pleading Guilty

5.     By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the indictment: Count 1, which charges defendant with wire fraud, in violation of Title 18, United States Code, Section 1343. In addition, as further provided below, defendant agrees to the entry of a forfeiture judgment.

## Factual Basis

6.     Defendant will plead guilty because she is in fact guilty of the charge contained in Count 1 of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish her guilt beyond a reasonable doubt, and establish a basis for forfeiture of the property described elsewhere in this Plea Agreement:

### *Relevant Background*

Between approximately June 2008 and June 2018, defendant BECKY LOUISE SUTTON was employed as a paralegal in the bankruptcy and restructuring practice group in Law Firm A's Chicago office. SUTTON worked for several attorneys, including Partner A, a partner who was a Chapter 7 and Chapter 11 trustee handling bankruptcy matters in the United States bankruptcy court in Chicago. In Chapter 11 cases, Partner A was a liquidating trustee, responsible for liquidating assets and making disbursements to creditors under confirmed Chapter 11 plans. SUTTON worked with Partner A on Chapter 7 and Chapter 11 bankruptcy cases and was entrusted with preparing and filing legal documents for the bankruptcy court and the

2

United States Trustee, maintaining books and records for Partner A, assisting Partner A in handling general banking related matters, and assisting Partner A in facilitating distributions of estate assets to creditors from fiduciary bank accounts.

### *SUTTON's Fraud Scheme*

Beginning no later than 2009, and continuing through in or about June 2018, SUTTON devised, intended to devise, and participated in a scheme to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises.

During her employment with Law Firm A, SUTTON embezzled bankruptcy estate funds from over 40 bankruptcy estate accounts and several liquidating trust accounts in Chapter 7 and Chapter 11 matters on which she worked. Among other things, she disbursed estate funds to her personal bank accounts and also used estate funds to make payments on her personal credit card accounts, student loans, and mortgage loans on property that she owned, knowing that she was not entitled to those funds. She also disbursed estate funds to other individuals including coworkers at Law Firm A who, as SUTTON knew, were not entitled to receive those funds. Further, SUTTON submitted false forms to conceal her diversion of funds.

SUTTON's scheme included, but was not limited to, the following instances through which estate funds intended to pay creditors were diverted and used to pay SUTTON or her associates:

3

<u>Method #1: Payments Diverted to PayPal Accounts</u>

SUTTON converted funds from bankruptcy estates that were intended to pay creditors and diverted the money to PayPal accounts that she held or controlled. For example, in one bankruptcy matter, SUTTON did not mail checks intended for the creditors, but instead diverted funds in the same amounts to a PayPal account SUTTON created. Specifically, although a Trustee Final Report ("TFR") for the case indicated that $1,524.39 was to be paid by check to a creditor on December 5, 2013, the $1,524.39 was actually diverted to SUTTON's PayPal account on February 18, 2014. Similarly, SUTTON did not mail a $4,188 check written to the IRS on July 23, 2014, and instead diverted that amount to her PayPal account on July 28, 2014.

Between approximately 2014 and 2018, SUTTON diverted at least $104,000 from estate bank accounts into PayPal accounts that she held or controlled, knowing that she was not entitled to those funds.

<u>Method #2: Payments Diverted to a Student Loan Account</u>

SUTTON further embezzled estate funds intended to pay creditors and diverted the money to student loan payments for Relative A's college education. For example, after the United States Trustee approved the TFR for a bankruptcy case, SUTTON added to an accompanying form a fictitious creditor who was purportedly owed $6,311.65 and diverted $6,311.65 from the estate bank account to pay down Relative A's student loan account. Also, in the same case, SUTTON diverted a $3,972.75 check made payable to true creditor Chase Bank, and issued a $2,338.90

4

check made payable to Citibank, which was not a creditor in the case. SUTTON fraudulently entered the Citibank check on a required bankruptcy court form. SUTTON routed payments (the exact same amounts of the Chase and Citibank checks) to the student loan account belonging to Relative A.

Between approximately 2013 and 2014, SUTTON diverted at least approximately $18,163 to the student loan account of Relative A, knowing that she and Relative A were not entitled to those funds.

Method #3: Payments Diverted to Personal Credit Card Accounts

SUTTON further embezzled estate funds intended to pay creditors and diverted the money to make payments on her personal credit card accounts. For example, in one bankruptcy case, SUTTON repeatedly diverted funds held in a trust account to make payments to satisfy the debt on a Sears credit card in SUTTON's name. Between approximately 2010 and 2018, SUTTON used this method to convert estate funds and pay at least approximately $157,000 in credit card debt that she had with Sears ($129,258), Target ($2,699), Discover ($11,815.91), Capital One ($3,318), and TD Bank ($9,272), knowing that she was not entitled to those funds.

Method #4: Payments Diverted to Personal Bank Accounts

SUTTON further embezzled estate funds intended to pay creditors and diverted the money to SUTTON's personal bank accounts. For example, a check from the trustee's account for a bankruptcy case was issued for $3,450.36 to true creditor

US Bank. However, SUTTON endorsed the check for deposit into her personal US Bank account, into which it was later deposited.

Between approximately 2013 and 2016, SUTTON transferred at least approximately $32,176 in estate funds directly to her own bank accounts, knowing that she was not entitled to those funds.

Method #5: Payments Diverted to Mortgage Loans

SUTTON further embezzled estate funds to pay down the balance on at least two mortgage loans on property she owned, including a home in which she lived and another property she used to generate rental income. For example, in one bankruptcy case, although a check was issued for $11,791.35 and made payable to a true creditor, SUTTON altered the check and diverted the $11,791.35 to pay down an account at Mortgage Company A, which held the mortgage on a home in which she lived.

Between approximately 2016 and 2018, SUTTON diverted at least approximately $89,356 in estate funds to make payments on mortgage loans on properties that she owned, knowing that she was not entitled to those funds.

Method #6: Payments Diverted to a Fictitious Company

SUTTON created and used a fictious entity to divert funds from estate accounts to make payments to herself or associates. For example, in 2013, in one bankruptcy matter, Sutton created a fictitious corporation, and opened a corresponding bank account, with a name similar to that of a legitimate estate creditor and used the fictitious corporation's bank account specifically for the purpose

6

of making fraudulent deposits. Specifically, in 2013, SUTTON caused a check for $29,764.22 to be made payable to the fictitious company, at the address for a company owned by SUTTON's relative, Relative B. The check was later deposited into the fictitious company's bank account, and SUTTON, in turn, used the funds to purchase a vehicle for $21,710, issue a check for $6,820 for another relative, and take multiple cash withdrawals that she used for herself, knowing that she was not entitled to those funds.

### Method #7: Payments Diverted to Other Individuals

SUTTON diverted funds from estate bank accounts to co-workers and other associates. For example, in one case, SUTTON diverted $5,168 to a Law Firm A co-worker's spouse who was not a scheduled creditor but was fraudulently identified as such. SUTTON used this method to fraudulently disburse funds to at least nine other individuals, who in total received at least $39,799 in funds from the same bankruptcy estate between November 2012 and February 2013. Of the nine payees, one was a co-worker of SUTTON's who received funds to pay off the co-worker's car loan. Another payee was an associate of SUTTON's who later moved into a home purchased by SUTTON in 2013. Subsequently, SUTTON made mortgage loan payments for that home using funds from estate accounts that were to be used for bankruptcy cases. SUTTON also created a PayPal account and paid the associate over $30,000 in funds from bankruptcy estates between April 2014 and October 2015.

### *Execution of the Scheme*

On or about May 4, 2017, SUTTON, for the purpose of executing the above-described scheme, knowingly caused to be transmitted by means of wire communication in interstate commerce certain writings, signs, and signals, namely, payment instructions for approximately $6,846 in funds intended for SUTTON's personal mortgage account at Mortgage Company A in Troy, Michigan, from a fiduciary bank account for which Partner A was trustee at MB Financial Bank in Chicago, Illinois.

### *Loss Attributable to SUTTON's Fraud Scheme*

Between approximately 2009 and 2018, SUTTON used the above-described fraud scheme to fraudulently embezzle at least approximately $325,455 from bankruptcy estates in Chapter 7 cases and at least approximately $285,807 from liquidating trusts in Chapter 11 cases, to which she was not entitled, with an actual loss of approximately $611,262 after certain reversals of transactions became effective. SUTTON acknowledges that, as a result of her scheme, Law Firm A sustained a loss of at least approximately $784,955, which includes approximately $101,975 in expenditure for a forensic accounting review, before seeking reimbursement from the firm's insurer.

### <u>Maximum Statutory Penalties</u>

7.      Defendant understands that the charge to which she is pleading guilty carries the following statutory penalties:

8

a.   A maximum sentence of 20 years' imprisonment. This offense also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that the judge also may impose a term of supervised release of not more than three years.

b.   Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

c.   Pursuant to Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which she has pled guilty, in addition to any other penalty or restitution imposed.

### Sentencing Guidelines Calculations

8.   Defendant understands that in determining a sentence, the Court is obligated to calculate the applicable Sentencing Guidelines range, and to consider that range, possible departures under the Sentencing Guidelines, and other sentencing factors under 18 U.S.C. § 3553(a), which include: (i) the nature and circumstances of the offense and the history and characteristics of the defendant; (ii) the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense, afford adequate deterrence to criminal conduct, protect the public from further crimes of the defendant, and provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (iii) the kinds of sentences available; (iv) the need to avoid unwarranted sentence disparities

9

among defendants with similar records who have been found guilty of similar conduct; and (v) the need to provide restitution to any victim of the offense.

      9.     For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

      a.    **Applicable Guidelines.** The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2023 Guidelines Manual.

      b.    **Offense Level Calculations.**

        i.    The base offense level is 7, pursuant to Guideline § 2B1.1(a)(1).

        ii.    The base offense level is increased by 14 levels, pursuant to Guideline § 2B1.1(b)(1)(H), because the actual loss involved in the offense is more than $550,000, but less than $1,500,000.

        iii.    The offense level is increased by 2 levels, pursuant to Guideline § 2B1.1(b)(9)(B), because the offense involved a misrepresentation and other fraudulent action during the course of a bankruptcy proceeding.

        iv.    The offense level is increased by 2 levels, pursuant to Guideline § 2B1.1(b)(10)(C), because the offense involved sophisticated means and

defendant intentionally engaged in or caused the conduct constituting sophisticated means.

v.      The offense level is increased by 2 levels, pursuant to Guideline § 3B1.3, because the offense involved the abuse of a position of trust.

vi.      Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for her criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for her actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to her ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

vii.      In accord with Guideline § 3E1.1(b), defendant has timely notified the government of her intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the Court to allocate its resources efficiently. Therefore, as provided by Guideline § 3E1.1(b), if the Court determines the offense level to be 16 or greater prior to determining that defendant is entitled to a two-level reduction for acceptance of responsibility, the government will move for an additional one-level reduction in the offense level.

viii.      Pursuant to Guideline § 4C1.1(a), the offense level determined under Chapters Two and Three of the Guidelines Manual is decreased by

2 levels, because the defendant did not receive any criminal history points from Chapter Four, Part A of the Guidelines Manual and the defendant is not otherwise disqualified by the other provisions enumerated under § 4C1.1(a).

      c. **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government, defendant's criminal history points equal zero, and defendant's criminal history category is I.

      d. **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 22, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory sentencing guidelines range of 41 to 51 months' imprisonment, in addition to any supervised release, fine, and restitution the Court may impose.

      e. Defendant and her attorney and the government acknowledge that the above guidelines calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional guidelines provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final guideline calculation.

Accordingly, the validity of this Agreement is not contingent upon the probation officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw her plea on the basis of the Court's rejection of these calculations.

10.     Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the sentencing guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw her plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

### Agreements Relating to Sentencing

11.     If defendant continues to accept responsibility for her actions within the meaning of Guideline § 3E1.1(a), the government will recommend a sentence below the applicable Guidelines range. Defendant shall be free to recommend any sentence she deems appropriate.

12.     It is understood by the parties that the sentencing judge is neither a party to nor bound by this Agreement and may impose a sentence up to the maximum penalties as set forth above. Defendant further acknowledges that if the Court does

not accept the sentencing recommendation of the parties, defendant will have no right to withdraw her guilty plea.

13.     Regarding restitution, defendant acknowledges that the total amount of restitution owed to the victims is approximately $611,263, minus any credit for funds repaid prior to sentencing, and that pursuant to Title 18, United States Code, Section 3663A, the Court must order defendant to make full restitution in the amount outstanding at the time of sentencing.

14.     Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), she is required to notify the Court and the United States Attorney's Office of any material change in economic circumstances that might affect her ability to pay restitution.

15.     Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

16.     Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

17.    After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to defendant.

### Forfeiture

18.    Defendant understands that by pleading guilty, she will subject to forfeiture to the United States all right, title, and interest that she has in any property constituting or derived from proceeds obtained, directly or indirectly, as a result of the offense.

19.    Defendant agrees to the entry of a personal money judgment in the amount of $611,263, which represents the total amount of funds involved in the offense. Defendant consents to the immediate entry of a preliminary order of forfeiture setting forth the amount of the personal money judgment she will be ordered to pay.

20.    Defendant admits that because the directly forfeitable property is no longer available for forfeiture as described in Title 21, United States Code, Section 853(p)(1), the United States is entitled to seek forfeiture of any other property of defendant, up to the value of the personal money judgment, as substitute assets pursuant to Title 21, United States Code, Section 853(p)(2).

21.    Defendant understands that forfeiture shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon defendant in addition to the forfeiture judgment. In this case,

however, the United States Attorney's Office will recommend to the Attorney General that any net proceeds derived from any forfeited assets be remitted or restored to eligible victims of the offense pursuant to Title 18, United States Code, Section 981(e), Title 28, Code of Federal Regulations, Part 9, and other applicable law.

22.     Defendant agrees to waive all constitutional, statutory, and equitable challenges in any manner, including but not limited to direct appeal or a motion brought under Title 28, United States Code, Section 2255, to any forfeiture carried out in accordance with this agreement on any grounds, including that the forfeiture constitutes an excessive fine or punishment. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

23.     This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 22 CR 234.

24.     This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District of Illinois and cannot bind any other

federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

**Waiver of Rights**

25.     Defendant understands that by pleading guilty she surrenders certain rights, including the following:

a.      **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against her, and if she does, she would have the right to a public and speedy trial.

i.      The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii.     If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and her attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii.    If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant guilty beyond a reasonable doubt, and that the jury could not convict her unless, after hearing all the evidence, it was persuaded of her guilt beyond a

17

reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

        iv.      If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

        v.      At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and her attorney would be able to cross-examine them.

        vi.      At a trial, defendant could present witnesses and other evidence in her own behalf. If the witnesses for defendant would not appear voluntarily, she could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

        vii.      At a trial, defendant would have a privilege against self-incrimination so that she could decline to testify, and no inference of guilt could be drawn from her refusal to testify. If defendant desired to do so, she could testify in her own behalf.

        b.      **Waiver of appellate and collateral rights**. Defendant further understands she is waiving all appellate issues that might have been available if she

had exercised her right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, if the government recommends a below-Guidelines sentence, defendant knowingly waives the right to appeal her conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution, in exchange for the concessions made by the United States in this Agreement. In addition, if the government recommends a below-Guidelines sentence, defendant also waives her right to challenge her conviction and sentence, and the manner in which the sentence was determined, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness or ineffective assistance of counsel, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

26.     Defendant understands that by pleading guilty she is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to her, and the consequences of her waiver of those rights.

## Presentence Investigation Report/Post-Sentence Supervision

27.     Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against her, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

28.     Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of her financial circumstances, including her recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of her sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

29.     For the purpose of monitoring defendant's compliance with her obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the Probation Office and the United States Attorney's Office

of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

### Other Terms

30.     Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

31.     Defendant understands that, if convicted, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

### Conclusion

32.     Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

33.     Defendant understands that her compliance with each part of this Agreement extends throughout the period of her sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further

understands that in the event she violates this Agreement, the government, at its option, may move to vacate the Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

34.    Should the judge refuse to accept defendant's plea of guilty, this Agreement shall become null and void and neither party will be bound to it.

35.    Defendant and her attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

36.     Defendant acknowledges that she has read this Agreement and carefully reviewed each provision with her attorney. Defendant further acknowledges that she understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: _DECEMBER 14, 2023_

MICHELLE PETERSEN
Digitally signed by MICHELLE PETERSEN
Date: 2023.12.13 13:07:51 -06'00'    by MP
_____
MORRIS PASQUAL
Acting United States Attorney

_____
BECKY LOUISE SUTTON
Defendant

_____
KARTIK K. RAMAN
Assistant U.S. Attorney

_____
GAL PISSETZKY
Attorney for Defendant

23