**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | 22 CR 00234 |
| | ) | Honorable Judge Rowland |
| BECKY SUTTON, | ) | |
| | ) | |
| Defendant. | ) | |

**SENTENCING MEMORANDUM**

NOW COMES the Defendant, Becky Sutton, by her attorneys, Gal Pissetzky and Jennifer Snyder, and respectfully files the following Sentencing Memorandum. In support thereof, Ms. Sutton states as follows.

**I.        Introduction**

When Becky Sutton was arrested in 2022, she immediately took responsibility for her actions. Ms. Sutton acknowledges the harm she caused and is determined to change her life and to never reoffend. As will be further discussed below, a community-based sentence without incarceration is "sufficient, but not greater than necessary to effectuate the goals of sentencing" established by Congress. 18 U.S.C. § 3553(a).

**II.        Objection to Guidelines Calculation – Paragraph 26**

The plea agreement contemplated, and Probation applied in paragraph 26 of the PSR, a two-level increase under USSG § 2B1.1(b)(9)(B). However, upon further review, the Defense does not believe that the additional two-level increase is appropriate. Section 2B1.1(b)(9)(B) authorizes a two-level increase when the conduct involved "fraudulent action during the course of a bankruptcy proceeding." Ms. Sutton's conduct did not occur during the course of a bankruptcy proceeding related to her assets or debts, but rather involved persons unrelated to her. In fact, Ms. Sutton admitted to embezzling from estate accounts and liquidating trust accounts of bankruptcy

estates that were already settled. Her conduct took place after the bankruptcy proceeding were concluded.

An example where the enhancement applied could be seen in *U.S. v. Tanke*, where the Defendant was sued by a bankruptcy trustee related to the recovery of embezzled funds during the period he served as vice-President of a company seeking bankruptcy protection. 743 F.3d 1296, 1307 n4 (9th Cir. 2014). In that case, the Defendant was found to have given false testimony in the bankruptcy proceedings in an attempt to conceal his theft from the company. Following his conviction related to that conduct, the court found that the two-level enhancement should apply. *Id*.; *See also U.S. v. Simpson*, 796 F.3d 548, 555 (5th Cir. 2015) (the defendant was given the two-level enhancement for conduct that involved his attempt to hide assets during the bankruptcy proceedings of his company.)

To contrast, Ms. Sutton diverted funds from the bankruptcy estates of unrelated individuals to her personal use, instead of repaying creditors the monies owed them. She did not, however, commit a fraud with respect to the proceedings themselves. To be sure, she defrauded creditors of the repayment of debts, but her actions occurred once the proceedings had been completed.

## III.    Offense Level Calculations

Under USSG §2B1.1, the base offense level for a violation of 18 U.S.C. §1343 is 7. Pursuant to USSG §2B1.1(b)(1)(H), the base offense level is increased by 14 levels due to the loss amount. Pursuant to §2B1.1(b)(10)(C), the offense level is increased by two levels. Additionally, under USSG §3B1.3, the offense level is increased by two levels because Ms. Sutton abused a position of trust or authority.

Ms. Sutton should receive a two-level reduction under §3E1.1(a), as well as an additional one-level reduction under §3E1.1(b). Ms. Sutton should also receive a two-level reduction for

meeting the criteria of §4C1.1(a). Thus, the defense position is that Ms. Sutton's adjusted offense level is 20.

Ms. Sutton's total criminal history score is zero, which establishes a criminal history category of I. Thus, a criminal history category of I and a total adjusted offense level of 20 has a guidelines range of 33 to 41 months. However, when considering 18 USC § 3553(a) in totality, a community-based sentence is sufficient and not greater than necessary to establish the sentencing goals.

## IV.    Sentencing Considerations

After calculating the applicable sentencing range, courts are then tasked with imposing a sentence that is reasonable but not greater than necessary under 18 U.S.C. § 3553(a). The Supreme Court has long held that sentencing guidelines are advisory in nature and have instructed sentencing courts to maintain "a strong connection between the sentence imposed and the offender's real conduct." *United States v. Booker*, 125 S.Ct. 738, 757 (2005). The federal sentencing statute, as modified by *Booker*, "required a court to give respectful consideration to the Guidelines but permits the court to tailor in light of other concerns as well." *Kimbrough v. United States*, 522 U.S. 85, 87 (2007). Though appellate courts presume a guideline sentence is reasonable, a guideline sentence is not reasonable *per se*. *See United States v. Cunningham*, 429 F.3d 673, 676 (7th Cir. 2005). In fact, sentencing courts can treat the applicable guideline range as presumptively unreasonable. *See Nelson v. United States*, 129 S.Ct. 890, 891 (2009). A sentence's reasonableness "depends on its conformity to the sentencing factors set forth in 18 U.S.C. § 3553(a)(2)." *Cunningham*, F.3d at 675. Provided the sentence is "rooted in § 3553(a), and sufficiently individualized to the circumstances of [the] case, and generally associated with

sentencing leniency" a below guidelines sentence is appropriate. *United States v. Wachowiak*, 496 F.3d 744, 745 (7th Cir. 2007).

In determining a sentence that reflects this directive, Section 2553(a) specifically instructs courts to consider:

> the nature and circumstances of the offense and the history and characteristics of the defendant; the kinds of sentences available; the defendant's guidelines range; any relevant policy statements; the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense. *See* 18 U.S.C. § 3553(a).

The statute further directs the sentencing court to impose the shortest sentence possible that (A) reflects "the seriousness of the offense, to promote respect for the law, and to provide punishment for the offense;" (B) deters future criminal conduct; (C) protects the public from the defendant; and (D) provides the defendant with the "needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." *See* 18 U.S.C. § 3553.

In determining a sentence that is sufficient but not greater than necessary, Ms. Sutton respectfully requests that this court consider the totality of the circumstances surrounding the instant offense, her personal characteristics, as well as her extremely low risk of reoffending. These factors will help guide the court toward a better understanding of the person Ms. Sutton truly is.

### A. Nature and Circumstances of the Offense

Ms. Sutton cannot be more ashamed and embarrassed to stand before this court convicted of a federal crime. She is a good person that made a very bad decision to defraud her employer

and their clients. Ms. Sutton recognized her bad judgment, and, upon her arrest, immediately began to change course. Ms. Sutton has accepted responsibility for her wrongdoings and has agreed to make full restitution to attempt to mitigate some of the damage she caused. Ms. Sutton is utterly remorseful, ashamed, and embarrassed by her actions.

### B. History and Characteristics

A sentence that is reasonable considers specific traits and life experiences as to not undermine our system of justice. By considering the history and characteristics of Ms. Sutton's life, this court actively recognizes that every individual deserves to be treated fairly.

Ms. Sutton describes her childhood as normal or average. She had a close relationship with both her mother and father prior to their deaths. Ms. Sutton's brother, Dave, tells a bit of a different story with respect to their upbringing, however, when he notes that their mother was manipulative and prone to guilt trips. Looking back, he believes that she suffered from an undiagnosed mental illness, but, finding himself unable to deal with her behavior as a child, he left home at an early age, leaving Ms. Sutton to fend for herself.

Ms. Sutton's father passed away when she was in her 20's of a heart attack, as heart issues have always plagued various members of her family, herself included. Her mother died of a stroke in 2010. Ms. Sutton was her mother's caregiver in her home prior to her passing.

Ms. Sutton married Roger Sutton in 1977. Throughout their marriage, he subjected her to physical and verbal abuse. She was punched with a closed fist and suffered other physical abuse. Her ex-husband also verbally abused her and was very controlling, particularly when it came to the family finances. He did not/would not work, despite dire financial circumstances that found the family needing to live in public housing. Ms. Sutton was forced to become the only financial support for her family, all while raising her son. The relationship with her husband ended in 1996,

but the scars clearly remain. Her ex-husband took his own life in 2020, which has certainly been traumatic for Ms. Sutton and her son, David Sutton.

Throughout her life, Ms. Sutton suffered from many health issues that continue to this day. She had chicken pox three times as a child, and then shingles 3 times as an adult. Beginning in college, she started to have respiratory problems that caused her to be hospitalized for a week. In 1987, following a grand mal seizure, she was diagnosed with multiple sclerosis and spent the next 3-4 decades trying to find an effective treatment. Her condition has caused a litany of symptoms, ranging from double vision to balance issues, optic neuritis, confusion, and seizures that result in lesions on her brain. Her condition is now in remission, though she continues to receive monitoring from her neurologist because she can relapse at any moment. Much like other members of her family, Ms. Sutton has cardiac issues and has been diagnosed with coronary artery disease. She has received stents on two different occasions, and currently takes 5 medications daily to help with that condition. She has also been diagnosed with osteoporosis and takes medication for that condition.

In addition to the myriad of physical ailments, Ms. Sutton has also been afflicted with mental health issues for most of her adult life. She has been diagnosed with depression and post-traumatic stress disorder. She attends weekly counseling sessions and takes medication to help alleviate the symptoms. She noted a period wherein she had daily suicidal thoughts but insists she will not follow through. She stated that because of the trauma her ex-husband's suicide caused to her son, she has vowed she will tough things out no matter how hard they get. She plans to continue in psychotherapy to help deal with her struggles.

As the court can see in the character letters attached to this memorandum, Ms. Sutton is known to her family and friends as a kind-hearted, genuine person who handles life's struggles

with grace and humility. She is described as a compassionate, gentle, and selfless person who puts others' needs before her own. Those who know her were shocked and surprised to hear of her current situation, but they also know that she will get through this. They know that she will come out stronger on the other side.

Ms. Sutton is known as the type of person who always puts others' needs before her own and has a true charitable spirit. On two separate occasions, she has taken care of family members during their medical struggles near the end of their lives. She cared for her mother after she had a stroke, and helped her sister with medical troubles after she suffered a stroke. She cared for both women until their deaths. She currently helps an elderly aunt and travels great distances to help care for her. Ms. Sutton does this because she truly wants to help others.

Michelle Jankuski noted in her letter how, for many years, Ms. Sutton has prepared meals and distributed them to the homeless. Ms. Jankuski talks of going with Ms. Sutton and being nervous about the types of places they were going to administer aid by way of food, hygiene items and warm clothes, but Ms. Sutton was undeterred. She went where the need was. Ms. Jankuski also talks of the great deal of remorse Ms. Sutton has expressed to her over her legal situation.

Janine Allison talks of Ms. Sutton's ability to be a mentor on both a personal and a professional level. She notes that Ms. Sutton has "taught me so many things that have helped me throughout my life and to this day. I would not be the person I am if not for her."

### C. Recidivism, Deterrence, and Other Policy Considerations

Deterrence is normally divided into two subcategories, specific and general. Specific deterrence is to deter Ms. Sutton herself from engaging in any criminal activity ever again. Following her arrest in 2022, Ms. Sutton has changed her life completely. Starting with her admission of her culpability in this offense, Ms. Sutton has made the decision to never again violate

any laws. She has devoted much of her life to helping others and continues to do so. She is fully rehabilitated and deterred. She has been on pre-trial release for nearly 2 years and has been fully compliant, but for a recent positive test for marijuana.

As for general deterrence, the notion that the severity of punishment carries the greatest deterrent effect is an outdated idea. Recent research and data clearly conclude that the certainty of punishment, not the severity of punishment, carries the greatest deterrent effect. Nagin, Daniel S., "Deterrence in the Twenty-First Century," in Crime and Justice in America: 1975-2025, ed. M. Tonry, Chicago, Ill.: University of Chicago Press, 2013: 199-264. Research shows that it is the certainty of being caught that deters a person from committing crime, not the fear of being punished. National Institute of Justice, "Five Things About Deterrence," June 5, 2016, nij.ojp.gov: https://nij.ojp.gov/topics/articles/five-things-about-deterrence. "Effective policing that leads to swift and certain (but not necessarily severe) sanctions is a better deterrent than the threat of incarceration. In addition, there is no evidence that the deterrent effect increases when the likelihood of conviction increases. Nor is there any evidence that the deterrent effect increases when the likelihood of imprisonment increases." *Id.*; see also Gleck et al, The Missing Link in General Deterrence Research, 43 *Criminology*, 3, pages 623-660, 2005 ("increased punishment levels are not likely to increase deterrent effects and decreased punishment levels are not likely to decrease deterrent effects.").

Ms. Sutton does not request that this court avoid all punishment, but instead, she asks that this court provide leniency in imposing the punishment. General deterrence will be accomplished when people in Ms. Sutton's shoes learn that good behavior and giving back to society still results in some punishment despite being balanced with compassion, people will understand that crime does not pay.

Lastly, this court should avoid unwarranted sentence disparities between similar offenders. Data released by the United States Sentencing Commission shows that 50% of sentences for similar offenses, with a criminal history category of I, was probation. https://ida.ussc.gov/analytics/saw.dll?Dashboard. In 25% of cases the sentence was probation and alternative sentences, and in the remaining cases the sentence was imprisonment.

When taking into consideration the totality of circumstances, Ms. Sutton characteristics, her difficult medical situation, and her behavior and actions since her arrest, a community-based sentence that does not involve incarceration is sufficient and not greater than necessary to accomplish the goals of Section 3553.

**V.     Conclusion**

Ms. Sutton has expressed clear remorse for her offense and vows to never re-offend. Prior to this arrest at the age of 65, she had proven herself capable of living a meaningful, fulfilling, and largely law-abiding life. Since her arrest, she has proven her sincere effort to rehabilitate and never to re-offend. As such, a community-based sentence adequately serves both the rehabilitative and punitive goals of sentencing. Ms. Sutton asks this Honorable Court to impose a community-based sentence not involving incarceration, which is sufficient, but not greater than necessary to comply with the various sentencing considerations.

Respectfully submitted,

/s/ Gal Pissetzky
Gal Pissetzky
35 E. Wacker Dr
Suite 1980
Chicago, IL 60601
(847)736-7756

## CERTIFICATE OF SERVICE

The undersigned, Jennifer Snyder, hereby certifies that in accordance with Fed.R.Crim.P. 49, Fed.R.Civ.P. 5, and the General Order on Electronic Case Filing (ECF), the

## SENTENCING MEMORANDUM

was served, on March 19, 2024, pursuant to the district court's ECF filers.


Respectfully submitted,

/s/ Gal Pissetzky